Doug Michie   CBN: 98541
1056 E. Meta Street #103
Ventura, CA 93001
doug@michielawfirm.com
 Tel:  805-641-1000
Fax:  805-258-7272

Attorney for Plaintiff,
OKSANA MICHIE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| OKSANA MICHIE, on behalf of herself and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GAVIN CHRISTOPHER NEWSOM, in his official capacity as Governor of the State of California, <br><br> and <br><br> TANI G. CANTIL-SAKAUYE, in her official capacity as Chair of the California Judicial Council, <br><br> Defendants. | Case No.:  2:20-cv-4213 <br><br> CIVIL COMPLAINT FOR <br><br> 1) VIOLATIONS OF ARTICLE 1 OF THE U.S. CONSTITUTION <br><br> 2) VIOLATIONS OF THE TAKINGS CLAUSE – 42 U.S.C. §1983 <br><br> 3) VIOLATIONS OF SUBSTANTIVE DUE PROCESS – 42 U.S.C. §1983 |

**Article I, Section 10.  Powers prohibited of States.**

*"No State shall ... pass any ... Law impairing the Obligation of Contracts."*

**Amendment V**

*"...nor shall private property be taken for public use, without just compensation."*

"*The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.*"

*Armstrong v. United States*, 364 U.S. 40, 49 (1960)

1

**COMPLAINT**

1.      By and through her undersigned counsel Plaintiff, OKSANA MICHIE, brings this action for declaratory and injunctive relief, and for monetary damages, on behalf of herself and all other similarly situated persons, companies and entities (collectively, "Plaintiffs"), and against GAVIN CHRISTOPHER NEWSOM, in his official capacity as Governor of the State of California ("Governor Newsom" or "Governor"), and TANI G. CANTIL-SAKAUYE, in her official capacity as Chair of the California Judicial Council ("Chair Cantil-Sakauye" or "Chair"). The Governor and the Chair have, without compensation, impaired the rental contracts between the Plaintiffs and their tenants. The laws have effectuated a taking of the property of Plaintiffs and have impacted the livelihoods of individuals across the State, forcing Plaintiffs to allow tenants to live in their property free of rent, meanwhile requiring them to pay and or incur property tax, insurance, mortgage payments and to pay for the maintenance on said property, without rental income to offset said expenses. These uncompensated seizures violate the Takings Clause of the Fifth Amendment, made applicable to States through the Fourteenth Amendment, and also violate well-established notions of Substantive and Procedural Due Process. Additionally, the laws passed prohibiting Plaintiffs from evicting their non-rent paying tenants, as allowed per the terms of their contracts with their tenants, is a bold violation of the Constitution's clear prohibition of laws by States impairing the obligation of contracts.  Plaintiffs respectfully request that this Court (1) declare the Governor's and the Chair's actions unconstitutional, and (2) order the payment of just compensation.

2.      On March 4, 2020, Governor Newsom issued his proclamation that a state of emergency exists in California due to COVID-19.  A true copy of this proclamation is attached as **Exhibit 1**.

3.      Governor Newsom on March 27th then issued his Executive Order N-37-20

("free-rent order"), which among other things, allows tenants to stop payment of rent, whether or not they are impacted by the novel coronavirus pandemic ("COVID-19"), for the public purpose of providing housing for members of the public who would otherwise join the ranks of California's numerous and swelling homeless population.  A true copy of this order is attached as **Exhibit 2**.

4.      In avoidance of his obligations as the duly elected representative of the citizens of California, the Governor sidestepped his obligation to address issues caused by the COVID-19 crises by authorizing a non-elected body, the California Judicial Council ("CJC"), to make his political decisions for him.  He did this by issuing his Executive Order N-38-20, passing omnipotent power to the CJC, purportedly authorizing them to take Plaintiffs property from them for public purposes, and impairing Plaintiffs' contracts with the tenants occupying their property. A true copy of this order is attached as **Exhibit 3**.

5.      The Chair Cantil-Sakauye, in conjunction with the other members of the non-elected California Judicial Council ("CJC"), have passed an Emergency Rule 1 [Unlawful Detainers] ("Rule 1") which prohibits courts from issuing summons on an unlawful detainer complaint until 90 days after the state of emergency related to COVID-19 is lifted by the Governor.  A true copy of this Order is attached as **Exhibit 4**.

6.      The Governor, through his free-rent order, and the Chair and her CJC, through their Rule 1, have placed the cost of these orders – issued for the benefit of select members of the public – squarely upon the shoulders of private individuals and their families, and has failed to justly compensate the affected parties for these takings undertaken for their benefit to the public. Without extending constitutionally required just compensation to Plaintiffs and those similarly situated, these orders jeopardize the sustainability of many California businesses and the livelihoods of individuals. In support of this demand for relief, Plaintiffs states as follows:

**INTRODUCTION**

7.      Plaintiffs are individuals and businesses from across the State of California, and are members of a class adversely affected by the Governor's and the Chair's actions – individuals and businesses ordered to allow tenants to live rent-free in their properties, and whose contract terms authorizing eviction for non-payment of rent have been impaired by the State.

8.      In the wake of a fast-moving disease outbreak, Plaintiffs stand on the precipice of economic collapse as a direct result of the actions taken by Governor Newsom and the Chair Cantil-Sakauye in response to COVID-19.

9.      As noted above, the Governor issued the free-rent order, Executive Order N-37-20, on March 27, 2020 [**Exhibit 2**], extending the time a tenant can answer an eviction complaint by 60 additional days, in essence providing the tenant 60 additional rent-free days at the expense of Plaintiffs.  Also, on March 27, 2020, allegedly to protect California's public health, safety and welfare, but additionally to prevent the ranks of California's substantial homeless population from swelling, the Governor issued his unconstitutional Executive Order N-38-20 [**Exhibit 3**} stating, among other things:

> "To the extent Government Code section 68115 or any other provision of law imposes or implies a limitation on the subject matter the Chairperson of the Judicial Council may address via emergency order or statewide rule issued pursuant to section 68115, that limitation is suspended."

10.      This second order placed omnipotent powers in the hands of the Chair Cantil-Sakauye and the CJC, an individual and a body that were not elected to make political decisions and that have acted unconstitutionally by passing Emergency Rule 1 [**Exhibit 4**] impairing the contractual terms of Plaintiffs, preventing them from evicting non-paying tenants for an ADDITIONAL 90 days after they have suffered the effects of the Governor's 60 day free-rent

order, and any extension he chooses to unilaterally issue.

11.    These Orders mandate that all landlords allow their non-paying tenants to continue to live in their properties rent-free, and that they not continue eviction actions that were then pending or planned.

12.    The Governor claimed his authority to enact the orders by citing a set of broad emergency statutes which he said authorized his actions to stem the spread of COVID-19 across California.

13.    This suit accepts as fact that the Governor took action for a public purpose. The World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared COVID-19 a "public health emergency of international concern", and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a "public health emergency".

14.    The Governor's and Chair's actions were not designed to serve Plaintiffs' private interests, nor did they identify any private interest served by their actions.

15.    The Governor's and Chair's Orders halted all economic activity for Plaintiffs, the people and businesses covered by their orders. The COVID-19 free-rent orders "make it commercially impracticable" to use the property belonging to the Plaintiffs for any economically beneficial purpose, and inflict "very nearly the same effect for constitutional purposes as appropriating or destroying [the property as a whole]." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 414–15 (1922); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480U.S. 470, 484–85 (1987) (explaining that regulatory taking occurs when the government action "makes it impossible for petitioners to profitably engage in their business, or that there has been undue interference with their investment-backed expectations").

16.    Despite issuing the COVID-19 free-rent orders for a readily-apparent public

purpose, the Governor and the Chair did not provide compensation for those who suffered substantial – and perhaps total – diminution of value in their property interests as a result. The COVID-19 free-rent orders by their operative provisions deprived Plaintiffs of all economically beneficial use of their Property and deprived Plaintiffs of their livelihoods for an undefined time period.

17.     The Orders constitute a regulatory taking implemented for a recognized public purpose, and therefore the failure to pay just compensation contravenes the Takings Clause of the Fifth and Fourteenth Amendments. *See Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992); *Horne v. Dep't of Agric.*, 576 U.S. 350, 135 S. Ct. 2419, 2426 (2015).  Further, the orders impair the private contracts between Plaintiffs and their tenants, in direct contravention of Article 1 of the U.S. Constitution.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), which confers original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

19.     This is a class action where Plaintiffs seek relief under 28 U.S.C. §§ 2201-2202, 42 U.S.C. §§ 1983 and 1988, Article 1 of the U.S. Constitution, and the Fifth and Fourteenth Amendments.   U.S. CONST. Art. 1, AMEND.  V, XIV; *see also* Fed. R. Civ. P. 23.

20.     Venue is proper under 28 U.S.C. § 1391(b), because Oksana Michie's properties that are the subject of this action are in this District, and a substantial part of the events giving rise to Plaintiffs' claim occurred in this district.

6

# PARTIES

21.     Oksana Michie ("Oksana") is a named Plaintiff and an adult individual and citizen of California, who resides in Ventura County, California.

22.     Defendant Governor GAVIN CHRISTOPHER NEWSOM, named in his official capacity, is the Governor of the State of California and is responsible for enforcing the laws of the State, and is charged with implementing policy through executive orders, including the Executive Orders issued on March 27, 2020.

23.     TANI G. CANTIL-SAKAUYE, in her official capacity as Chair of the California Judicial Council, is responsible for enforcing and implementing laws, regulations and policies for the operation of the Courts of the State of California.  She was not elected to make political decisions, nor was the California Judicial Council, an appointed body.  She and her Council are charged with implementing policy through emergency rules of court, including the Emergency Rule 1 which is a subject of this action.

# FACTS

### *COVID-19 Pandemic and*
### *Governor Newsom's Emergency Order on March 4, 2020*

24.     On March 4, 2020, Governor Newsom issued his proclamation that a state of emergency exists in California due to COVID-19.

25.     The World Health Organization ("WHO") and the Center for Disease Control and Prevention ("CDC") identified COVID-19 as a "public health emergency of international concern."

26.     Likewise, the U.S. Department of Health and Human Services ("HHS") declared that COVID-19 has created a public health emergency.

27.     As the perambulatory language of the COVID-19 emergency order indicate, Governor Newsom relies upon a number of different sources to justify the executive action he undertook to address the threat of COVID-19.

28.     Subsequent executive orders further attempt to allow the Governor to dodge his responsibility to Plaintiffs, by unconstitutionally providing the Chair and her CJC omnipotent powers to take Plaintiffs' property without compensation and to impair Plaintiffs' contracts in complete disregard to the Constitution's prohibition of these very acts.

29.     The Governor's free rent order was effective for 60 days.  However, the Chairs further free rent rule extends this period of free rent ***an additional 90 days!***  Moreover, these additional 90 days are not from the end of the Governor's current 60-day free rent period, but from the end of the Governor's declared state of emergency – a period of time that is uncertain and that could possibly continue for years.

30.     Before the actions of the Governor and the Chair, landlords had the burden under state law of undergoing an unlawful detainer court proceeding before they could evict non-paying tenants per the terms of their contracts.  This process can take many months, with a median time from service of the notice-to-quit to regaining possession of their property of three months.  A number of tenants declare bankruptcy near the end of this process, requiring landlords to seek relief form the bankruptcy court ordered stay to continue the unlawful detainer, adding another median time of three months to the procees.  Finally, after regaining possession of their property, landlords must then bear the expense of cleaning, repairing, and then advertising and leasing their property, adding another median time of a month before they finally receive another dollar of rent.

31.     The orders and rule complained of herein add nearly one-half year more of no rent to this already costly and lengthy processes.  The lost rent breaks down as follows:

8

| | |
|---|---|
| Court time to evict & regain possession: | 3 months |
| Time to obtain release of bankruptcy stay: | 3 months |
| Governor's free-rent period: | 2 months |
| Judicial Council's free-rent period: | 3 months |
| Clean up, advertise and lease up: | <u>1 month</u> |
| Period of free rent for tenant: | 12 months/1 year |

Additional costs to property owner:
Eviction court costs,
Eviction lawyer
Bankruptcy lawyer
Clean up and maintenance,
Advertising costs

32.     Notably absent from the free-rent orders, or any other executive orders issued by Governor Newsom or the Chair, is any provision addressing the inherent financial burden inflicted by the orders on individual and business landlords throughout California – a direct result of the mandated order allowing Plaintiffs tenants to occupy their property rent free.

33.     Notably, there is no end date to the Governor's emergency proclamation.  And the Chair and her CJC's Rule :

> "… will remain in effect until 90 days after the Governor declares that the state of emergency related to the COVID-19 pandemic is lifted," [**Exhibit 4**].

34.     As of the filing of this Complaint, these Orders remain in effect with no end date in sight.

<u>*Oksana Michie*</u>

35.     Before the free-rent orders, Oksana had spent substantial time and money in maintaining and improving her three rental properties.  She has dutifully paid the State imposed property taxes on the properties, made mortgage payments, and has taken a financial loss in evicting a prior tenant who failed to pay rent as agreed,  She has pursued her goal of private

property ownership with the belief that the real estate laws in California are transparent, and that the contract terms that she and her tenants agree upon will not be impaired or interfered with by the State, its Governor, nor by political rules imposed by the Chair.  Her goal has been to earn a living capable of providing for her family by investing her time and money in her rental properties.

36.    Now, she is solely concerned with surviving day-to-day and left to wonder whether she ever will be allowed to exercise her right as owner to determine who can reside in her property – or if she will still be the owner of the properties once the Governor's free-rent orders are finally lifted.

37.    The free-rent orders prevent all evictions for at least an additional five months to purportedly preserve public health, safety and welfare; however, the orders paid no attention to the substantial and adverse impact the rent-free orders would have on the livelihoods of mom & pop rental property owners like Oksana and other Class Members.

38.    The free-rent orders force Oksana to allow tenants to live in her properties rent free; countless other California property owners, who are similarly situated – the other Class Members – suffer the same consequences as the Governor's free-rent orders prevent them from exercising their contract rights free-rent orders to evict non-paying tenants, and force them to allow rent free occupation of their properties.

39.    With no revenue coming in, small property owners like Oksana and other Class Members cannot afford to continue maintaining and paying for their properties, when they are forced to allow their properties to be occupied without receiving rent.

40.    Because of the free-rent orders, Oksana and other Class Members no longer have a means to enforce rent payments.

41.    All Class Members, like Oksana, recognize the exigent nature of the extant public health emergency; nevertheless, they question why mom & pop rental owners are asked to bear

the cost for the measures that the Governor and Chair have determined are necessary to support public health.

42.     Oksana and other Class Members have asked for assistance from the State, but they have been refused replacement of the rent that they have been prevented from collecting.

43.     The free-rent orders in essence will remain in effect "until further notice" which is terrifying for mom & pop rental owners and other Class Members. They fear the ominous and looming possibility that – soon – they will be unable to pay their bills or buy food for their families without receiving rent.  Moreover, the State insists that they continue paying property tax on their properties, and that they continue to maintain the property for their tenants, even though they are prevented from collecting any rent whatsoever.

44.     The longer the free-rent orders remain in effect, and the longer Californians live without a clear end date for their right to evict non-paying tenants, the greater the fear of economic ruin becomes for owners like Oksana and other Class Members.

45.     It shocks the conscience, and is arbitrary and capricious, to force small mom & pop owners to privately bear without compensation the cost of the free-rent orders, orders which were issued for the stated public purpose of slowing the spread of COVID-19 across California, but also serve the public purpose of preventing the swelling of the ranks of California's numerous and growing homeless population.

## CLASS ALLEGATIONS

46.     Oksana brings this action on behalf of the all Class Members pursuant to provisions of Federal Rules of Civil Procedure 23 (a), (b)(1), (b)(2) and/or (b)(3). Fed. R. Civ. P. 23(a), (b)(1)-(3).

47.     Oksana and Class Members are, as noted above, rental property owners prevented

from collecting rent as a result of the free-rent orders.

48.    The class consists of all owners who satisfy each of the following criteria:

(a) At the time when the COVID-19 free-rent orders became effective, they were owners of properties rented or held out for rent to tenants and, thus, impacted by the COVID-19 free rent orders; and

(b) As a result of the mandated free-rent orders, they are subject to having their properties occupied against their will by tenants not paying rent or providing any other form of compensation.

49.    Excluded from the class are any property owner acquiring his property after the March 27th issuance of the free-rent orders.  Also excluded from the class are all directors, officers, employees, parents, affiliates and subsidiaries, their successors, agents, legal representatives, heirs and assigns, and any persons or entities controlled by any excluded property owner.

50.    This class is so numerous that joinder of all members is impractical. The class is composed possibly millions of rental property owners across the State of California.

51.    As the named Plaintiff, Oksana's claims are typical of the claims of the members of the Class. All of the claims are based on the same factual and legal theories.

52.    Oksana will fairly and adequately protect the interests of the class. She is committed to litigating this matter vigorously. Oksana has retained counsel to handle her constitutional claims against government actors, involving questions of substantive and procedural due process and violations of the Takings Clause. And Article 1 of the Constitution.  Neither Oksana nor her counsel have any interest that might cause them not to pursue this action vigorously.

53.    Class certification under Fed. R. Civ. P. 23(b)(1) is appropriate in this action because prosecuting separate actions by or against individual class members would create a risk of either:

(a)    Inconsistently or varying adjudications with respect to individual

12

class members that would establish incompatible standards of conduct for the party opposing class; or

(b)     Adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

54.     Class certification under Fed. R. Civ. P. 23(b)(2) is appropriate in this action because Governor Newsom and the Chair have acted on grounds that apply generally to the Class – that is, *inter alia*, issuance of the COVID-19 free-rent orders – so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

55.     Class certification under Fed. R. Civ. P. 23(b)(3) is appropriate in this action because there are numerous questions of law and fact which are common to the Class and which predominate over any questions affecting individual members of the Class, including, without limitation, the following:

(a) Whether the COVID-19 free-rent orders violated the substantive due process rights of affected owners by arbitrarily, capriciously and irrationally interfering with, *inter alia*, their contract rights [in such a manner that would shock the conscience. *Lowe v. S.E.C.*, 472 U.S. 181, 228 (1985) (citing *Dent v. West Virginia,* 129 U.S. 114, 121-122 (1889)).

56.     Indeed, the only individual question appears to be the amount of monetary damage suffered as a result of the COVID-19 free-rent orders – and thus, just compensation owed – which is attributable to each Class Member.

57.     Class certification under Fed. R. Civ. P. 23(b)(3) is also appropriate in this action because a class action is superior to other methods for the fair and efficient adjudication of this

controversy, in that:

(a)     The critical facts and applicable questions of law are identical across all Class Members, even though the effects of the COVID-19 free-rent orders may be small to some members of the Class, and establishing whether Governor Newsom's actions were unconstitutional is complex, such that prosecution of individual actions is impractical and not economically feasible;

(b)     By contrast, the cumulative damages caused by the COVID-19 free-rent orders across all Members of the Class is substantial;

(c)     Without the class action device, Oksana and Class Members would be left without a remedy for the wrongful acts alleged, and Defendants' allegedly unconstitutional actions would be left unchallenged;

(d)     The prosecution of separate lawsuits by individual members of the class would create the risk of inconsistent adjudications with respect to the individual class members, which would establish incompatible standards of conduct for the Governor and Chair, making concentration of the litigation concerning this matter in this Court desirable; and

(e)     No unusual difficulties are likely to be encountered in the management of this action as a class action.

## COUNT I

**Oksana and Similarly Situated Class Members v. Defendants**

**POWERS PROHIBITED STATES—Art 1. Section 10**

**(COVID-19 Free-Rent Orders Impair the Contracts Between Oksana and Class Members and Their Tenants in Violation of the First Amendment)**

58.     Plaintiffs hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

59.     Never in the modern history of the United States – even in war time – has such a large swath of the California economy been idled for so long by a government order.

60.     Oksana and Class Members have a protected interest in their right to enter into private contracts without arbitrary State governmental interference.  The right to freedom of contract is a fundamental right protected by the Constitution.  There is no rational basis for placing the cost of housing the homeless on rental property owners, and the State's restrictions on that right are subject to strict scrutiny.

61.     Rental property owners have a protected fundamental property right to use and enjoy their property in which they hold a recognized fee simple interest. *See MFS, Inc. v. DiLazaro,* 771 F. Supp. 2d 382, 440–41 (E.D. Pa. 2011) (*citing DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell,* 53 F.3d 592, 600 (3d Cir.1995)); *see also Horne*, 576 U.S. 350, 135 S. Ct. at 2426.

62.     The State has passed a law which substantially impairs the Plaintiffs contractual rights with their tenants.

63.     The State has no significant and legitimate purpose behind the regulation which places the burden of the economic recession squarely and solely on the shoulders of small rental property owners.

64.     The law is unreasonable and not appropriate for its intended purpose. The law impacts the fundamental right to enter into private contracts specifically recognized in the Constitution.  The destruction of contracts of small rental owners is not rationally related to a legitimate government interest.

65.     Defendants have acted under color of state law with the intent to unlawfully deprive Oksana and Class Members of their right to contract in violation of Article 1 of the

United States Constitution.

66.     Defendants' actions, including issuance and enforcement of the COVID-19 free rent orders, constitute the official policy, custom, and practices of the State of California.

67.     Therefore, Governor Newsom and the Chair have violated Oksana's and other Class Members' right to enter into private contracts. *See also Nashville, C. & St. L. Ry. v. Walters*, 294 U.S. 405, 415 (1935) (concluding that state's police power was "subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably," such as requiring a railroad to bear the expense associated with construction of a public road and moving train tracks for the road).

68.     The Governor and Chair have arbitrarily, irrationally and capriciously "impinge[d] upon [Oksana's] use and enjoyment of [her] property" by, *inter alia*, requiring Oksana – and the other Class Members – to allow occupation of their property rent free indefinitely and to privately bear the burden for such publicly beneficial decisions, which are aimed at keeping California's homeless population in check. *See DeBlasio,* 53 F.3d at 601.

69.     The Governor and Chair implemented the COVID-19 free-rent orders for the purpose of preserving public health, safety and welfare. The implementation of these Orders, however, caused Oksana and those similarly situated substantial economic harm which they are being asked to privately bear for a manifest public benefit.

70.     Defendants' intentional, willful and wanton conduct 'shocks the conscience' of all citizens, who fear unchecked government intrusion for arbitrary and capricious ends – even if such ends are not ill intentioned.

71.     In depriving Oksana and other Class Members of their right to contract, the Defendants have acted intentionally, willfully, wantonly, and with callous and reckless

disregard for Plaintiffs' constitutional rights.

72.       As a direct and proximate result of the COVID-19 free-rent orders, Oksana and other Class Members have and will continue to sustain monetary damages including loss in the value of their rental property, lost rents, profits, expenses, attorneys' fees, and other costs incurred.

# COUNT II

### Oksana and Similarly Situated Class Members v. All Defendants

### <u>VIOLATION OF THE TAKINGS CLAUSE—42 U.S.C. §1983</u>

**(COVID-19 Free-Rent Orders Are an Unconstitutional Regulatory Taking of Oksana's and Class Members' Property Without Just Compensation in Violation of the Fifth Amendment's Takings Clause Incorporated under the Fourteenth Amendment)**

73.       Plaintiffs hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

74.       The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. CONST. AMEND. V.

75.       The Takings Clause "is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536–37 (2005) (quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 315 (1987) (emphasis in original)).

76.       The Takings Clause bars government actors "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49 (1960).

77.       Governor Newsom, in conjunction with the Chair, issued the COVID- 19 free-

17

rent orders as a means of slowing the spread of the novel coronavirus.

78.     Governor Newsom, in conjunction with the Chair, has acted under color of state law, and the COVID-19 free-rent orders were issued to serve a well-recognized public purpose by a duly elected state official and his designee.

79.     The COVID-19 free-rent orders adversely impacted Oksana and Class Members' use of their Real Property to such an extent that, at least temporarily, the Orders entirely diminished the economically beneficial use of those Properties.

80.      During the indefinite period of shutdown, the Orders prohibited *all* economically beneficial and profitable uses of Oksana's Real Property and that of other Class Members; save bare ownership, the entire bundle of property rights was extinguished.

81.     Oksana and Class Members were not permitted to use their Real Property in any fashion to collect rents; instead, the COVID-19 free-rent orders required that non-paying tenants be allowed to occupy the Real Property rent free.

82.     As a practical matter, the Orders prevented the affected Properties from being leased, subleased, bought, sold or used for other purposes. Accordingly, the COVID-19 free-rent orders interfered with the ordinary investment expectations of Oksana and Class Members as property holders.

83.     The Supreme Court "recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle*, 544 U.S. at 537

84.     "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415–16 (1922).

85.     Governor Newsom's and the Chair's COVID-19 free-rent orders "goes too far" and must "be recognized as a taking." *See id.*

86.     Otherwise, without just compensation guaranteed by the Takings Clause, Oksana and all Class Members similarly situated will be privately saddled with the cost of paying for government action undertaken for the common good.

87.     Oksana and Class Members have suffered a complete loss of "*all* economically beneficial uses" of their Property while the COVID-19 free-rent orders remain in effect. This complete loss constitutes a categorical taking of Oksana and Class Members' ability to collect rent or their inability to exercise any of their other property rights with regard to their Real Property. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992).

88.     Oksana and all Class Members who are similarly situated, " h[ave] been called upon to sacrifice all economically beneficial uses [for their Properties] in the name of the common good, that is, to leave [their] propert[ies] economically idle, [they] h[ave] suffered a taking." *Lucas*, 505 U.S. at 1019.

89.     In the alternative, under the framework articulated by the Supreme Court in *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124 (1978), the COVID-19 free-rent orders constitute a taking based upon "the magnitude of [the Orders'] economic impact and the degree to which [the Orders] interfere[] with legitimate property interests." *Lingle*, 544 U.S. 528 at 540.

90.     The Supreme Court's analysis in *Penn Central,* supra, sets forth the framework for assessing whether government action is considered a regulatory taking, identifying "several factors that have particular significance." *Penn Central Transp. Co. v. New York City,* 438 U.S. 104 at page 124 (1978):

> "On the other hand, if the regulation "fall[s] short of eliminating all economically beneficial use, a taking nonetheless may have occurred,"

*Palazzolo* [*v. Rhode Island*]*,* 533 U.S. [606] at 617, 121 S.Ct. 2448[, 150 L.Ed.2d 592 (2001)], and the court looks to three factors to guide its inquiry: **(1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action,"** *Penn Cent.,* 438 U.S. at 124, 98 S.Ct. 2646. While these factors provide "important guideposts," "[t]he Takings Clause requires careful examination and weighing of all the relevant circumstances." *Palazzolo,* 533 U.S. at 634, 636, 121 S.Ct. 2448 (O'Connor, J., concurring); *see also Tahoe–Sierra,* 535 U.S. at 321, 122 S.Ct. 1465 (whether a taking has occurred "depends upon the particular circumstances of the case"); *Yee v. City of Escondido,* 503 U.S. 519, 523, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (regulatory takings claims "entail[ ] complex factual assessments")."

*Lost Tree Vill. Corp. v. United States*, 115 Fed. Cl. 219, 228 (2014) (emphasis added).

91.      Since the onset of Governor's COVID-19 free-rent orders, Oksana and Class Members have not been permitted to evict non-paying tenants, nor have they been allowed to use their real Property for any economically profitable use.

92.      The Governors' COVID-19 free-rent orders will in essence remain in effect until further notice and, as a result, Oksana – and all Class Members similarly situated – are deprived of the value of their Real Property while the Orders are in effect. The real property occupied by non-paying tenants are not usable for any other purpose, nor can these affected properties  currently be effectively bought, sold or leased, nor can Oksana's and Class Members' Real Property occupied by non-paying tenants be used to generate income while the Orders are in effect.

93.      The COVID-19 free-rent orders have either entirely drained Oksana and Class Members' Property of all economic value during their pendency, or have nearly done so; in either event, the diminution of value and government interference caused by these Orders is an unconstitutional taking without just compensation.

**COUNT III**

**Oksana and Similarly Situated Class Members v. All Defendants**

<u>**SUBSTANTIVE DUE PROCESS—42 U.S.C. §1983**</u>

**(COVID-19 Free-Rent Orders Deprives Oksana and Class Members of Life, Liberty and/or Property without Due Process of Law in Violation of the Fourteenth Amendment)**

94.     Plaintiffs hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

95.     Oksana and other Class Members have a protected liberty interest in their right to enter into private contracts free from arbitrary government interference and deprivation. *Lowe v. S.E.C.*, 472 U.S. 181, 228 (1985) (citing *Dent v. West Virginia,* 129 U.S. 114, 121-122 (1889)).

96.     The COVID-19 free-rent orders instructed all "landlords in California to desist in eviction of non-paying tenants indefinitely, without providing a mechanism to alleviate the economic harm to countless Class Members – like Oksana – who have lost their rental income.

97.     "'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty[.]'" *Salerno,* 481 U.S. at 746 (quoting *Rochin,* 342 U.S. at 172, and *Palko,* 302 U.S. at 325–326).

98.     The COVID-19 free-rent orders, therefore, violate Due Process by "interfere[ing] with rights 'implicit in the concept of ordered liberty[.]'" *Id.*

99.     Governor Newsom's and the Chair's free-rent orders interfere with the rights of Oksana and all those Class Members similarly situated by arbitrarily forcing these individuals to shoulder the financial burden for orders aimed at benefiting the public across the

entire State.

100.     The forced stoppage of the right to evict non-paying tenants has caused Oksana to lose her livelihood. The same is true of other Class Members.

101.     The Governor's COVID-19 free-rent orders, not only deprived Oksana of her rental payments – her ability to earn a living with her property – the Orders simultaneously demanded that she and the Class Members subsidize the public health, safety and welfare of the State.

102.     The Due Process Clause of the Fourteenth Amendment prohibits Governor Newsom and the Chair from demanding this hefty cost be paid by Oksana and other Class Members; it is intended to protect individuals from this manner of arbitrary and irrational government interference.

103.     "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 847 (quotations omitted).

104.     This interference by the COVID-19 free-rent orders "'shocks the conscience' and violates the 'decencies of civilized conduct.'" *See Lewis*, 523 U.S. 833, 846–47 (citations omitted).

105.     Requiring owners like Oksana and other Class Members to personally bear the cost of Governor's COVID-19 free-rent orders "d[oes] not comport with traditional ideas of fair play and decency" and therefore violates substantive due process. *Breithaupt,* 352 U.S. at 435.

106.     Defendants' intentional, willful and wanton conduct 'shocks the conscience' of all citizens, who fear unchecked government intrusion for arbitrary and capricious ends – even if such ends are not ill intentioned.

107.    In depriving the owners like Oksana and other Class Members of their protected liberty interests without due process of law, the Defendants have acted intentionally, willfully, wantonly, and with callous and reckless disregard for the constitutional rights of Oksana and Class Members.

108.    As a direct and proximate result of the COVID-19 free-rent orders, Oksana and other Class Members have and shall continue to sustain monetary damages including loss in the value of their property, attorneys' fees, and other costs incurred.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor, against Defendants jointly and severally, and seek relief for:

(1)    Compensatory damages adequate to satisfy Oksana and Class Members in the amount owed as just compensation for the regulatory taking of their Real Property;

(2)    Compensatory damages adequate to satisfy Oksana and Class Members in the amount owed for Defendants' violations of the Due Process Clause of the Fourteenth Amendment;

(3)    Punitive damages;

(4)    A declaratory judgment that issuance and enforcement of the COVID-19 free-rent orders is an unconstitutional impairment of contracts, in violation of Article 1 of the U.S. Constitution;

(5)    A declaratory judgment that issuance and enforcement of the COVID-19 free-rent orders is an unconstitutional taking without just compensation, in violation of the Fifth and Fourteenth Amendments;

(6)    A permanent injunction to prohibit Defendants from enforcing the COVID-19 free-rent orders unless, and until, a mechanism is established to provide (a) just compensation

for affected property owners and (b) appellate review of Governor Newsom's and the Chair's

orders as to their constitutionality;

(7)     An award of costs and expenses, including reasonable attorneys' fees under 42 U.S.C. § 1988; and

(8)     Such other and further relief as this Court deems appropriate.


MICHIE LAW FIRM



By: /s/ Doug Michie                         
Doug Michie, Esquire (CBN 98541)
1056 E Meta St #103
Ventura, CA 93001
Phone: 805-641-1000
Fax: 805-258-7272
Email: doug@michielawfirm.com

*Counsel for Plaintiffs*

# JURY DEMAND

Plaintiffs demand a jury trial on all counts contained in the Complaint.

MICHIE LAW FIRM

By: /s/ Doug Michie
Doug Michie, Esquire (CBN 98541)
1056 E Meta St #103
Ventura, CA 93001
Phone: 805-641-1000
Fax: 805-258-7272
Email: doug@michielawfirm.com

*Counsel for Plaintiffs*